**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2015 Term**

_____

**No. 13-0875**

_____

**FILED**

**April 10, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**SHEENA H. FOR RUSSELL H., deceased, on behalf of the minor child, L.H.,**
**Petitioner**

**v.**

**WEST VIRGINIA OFFICE OF THE INSURANCE COMMISSIONER; and**
**AMFIRE, LLC.,**
**Respondents**

_____

**Appeal from the Workers' Compensation Board of Review**
**Claim No. 2009085340**
**Board of Review No. 2048239**

**REVERSED AND REMANDED**

_____

**Submitted: March 10, 2015**
**Filed: April 10, 2015**

Stephen P. New, Esq.                     Robert J. Busse, Esq.
Amanda J. Taylor, Esq.                   Timothy E. Huffman, Esq.
Beckley, West Virginia                   Jackson Kelly PLLC
Counsel for the Petitioner               Charleston, West Virginia
                                         Counsel for the Respondent

John H. Shumate, Jr., Esq.
Attorney at Law
Mount Hope, West Virginia
Guardian Ad Litem for L.H.

**JUSTICE KETCHUM delivered the Opinion of the Court.**

**CHIEF JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.**

**JUSTICE DAVIS concurs and reserves the right to file a concurring opinion.**

**JUSTICE BENJAMIN concurs and reserves the right to file a concurring opinion.**

**JUSTICE LOUGHRY concurs and reserves the right to file a concurring opinion.**

**SYLLABUS BY THE COURT**

1.      "The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature."  Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953).

2.      "It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice.  It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity."  Syl. Pt. 2, *Click v. Click*, 98 W.Va. 419, 127 S.E.194 (1925).

3.      "Where a particular construction of a statute would result in an absurdity, some other reasonable construction, which will not produce such absurdity, will be made."  Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938).

4.      "A statute should be so read and applied as to make it accord with the spirit, purposes, and objects of the general system of law of which it is intended to form a part[.]"  Syl. Pt. 5, in part, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

5.      Where a claimant to dependent's death benefits under the Workers' Compensation Act delays filing a claim because the claimant was unaware, and could not have learned through reasonable diligence, that the decedent's cause of death was work-related, and the delay was due to the medical examiner completing and making available an autopsy report, the six-month time limitation on filing a claim in West Virginia Code § 23-4-15(a) [2010] is tolled until the claimant, through reasonable diligence, could have

i

learned of the autopsy report finding that the decedent's death was, in any material degree, contributed to by an injury or disease that arose in the course of and resulting from the decedent's employment.

**Justice Ketchum:**

Petitioner, Sheena H. ("Ms. H."), on the behalf of her six-year-old granddaughter ("L.H."), appeals an order of the Workers' Compensation Board of Review, denying dependent's death benefits for the death of L.H.'s father, Russell H.[1] The Board of Review based its denial on Ms. H. not filing her application within six months after Mr. H's death.

Ms. H. argues that there was no indication that the death of L.H.'s father was work-related until eight months after his death, when the Chief Medical Examiner's autopsy report was completed and made available to her. She asserts that the time limitation on applying for death benefits begins to run when she could have learned that the death was work-related, not when the death occurred. Respondent ("the insurance commissioner") contends that the time limitation on applying for death benefits begins to run on the date of the death and may never be tolled.

We reverse and remand the Board of Review's order. We find that the Legislature did not intend to completely bar a claim for dependent's death benefits when, due to the medical examiner's delay in preparing an autopsy report, there was no indication that an employee's death was work-related until eight months after the death. Furthermore, Ms. H. was a proper party to file a claim for dependent's death benefits

---

[1] Because L.H. is a minor, we follow our traditional practice in cases involving sensitive facts and use only her initials. *See Shelby J.S. v. George L.H.*, 181 W.Va. 154, 155 n.1 381 S.E.2d 269, 270 n.1 (1989). *See also* W.VA. R.APP. P. 40(e)(1).

1

under West Virginia Code § 23-4-15(a) [2010] on L.H.'s behalf. The Board of Review erred in finding otherwise.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

On December 7, 2010, Russell H., a twenty-four-year-old coal miner, died in his sleep from a seizure. He left behind his mother, Ms. H., who is the petitioner, and a now six-year-old daughter, L.H., on whose behalf Ms. H. petitions this Court. L.H.'s mother (who never married Mr. H.) is not a party to this proceeding.

Mr. H. suffered a work-related injury on March 24, 2009, when a wrench fell from a coal mine's ceiling and hit him on the head. The injury left him unconscious for one minute and resulted in a golf-ball-size knot on his head. Even though he was transported to the local hospital, neither he, his employer, nor his treating physicians recognized the magnitude of Mr. H's injury. He did not stay in the hospital overnight. Rather, his treating physicians prescribed him pain medication and told him to return to the walk-in clinic for a follow up visit if he deemed it necessary. He did not seek additional medical treatment for this injury or for health-related issues arising out of the injury. Mr. H. returned to work a couple of days later, and in May 2009, his claim for temporary total disability benefits was closed because he was off work for less than three days.

Twenty-one months later (on December 7, 2010), Mr. H. died in his sleep. The Office of the Chief Medical Examiner performed an autopsy on Mr. H. the following day, December 8, 2010. However, for unknown reasons, the autopsy report was not

completed and made available to Mr. H's family until August 24, 2011 (more than eight months after his death). The autopsy report declared that Mr. H's 2010 death was the result of a traumatic seizure disorder that stemmed from the 2009 work-related injury. It stated: "[Mr. H.] died as a result of a seizure while sleeping; in the setting of a traumatic seizure disorder *following a remote head injury at work*[.] . . . *[T]he manner of death is best certified as accident*." (Emphasis added). The autopsy report did not establish when Mr. H. began to suffer from the seizure disorder. His death certificate was then amended to reflect that his cause of death was a "seizure" as a consequence of "traumatic seizure disorder."

There is conflicting evidence as to whether the family knew at the time of the death that Mr. H. (who lived alone) suffered from seizures. The Chief Medical Examiner stated in the autopsy report that Mr. H's family "reported witnessed seizure activity." By contrast, Ms. H. responded to an interrogatory that the family did not know he suffered from seizures. What is clear, however, is that there was no medical evidence at that time which linked Mr. H's death to his work-related injury.

Dependents of a deceased employee have six months to apply for death benefits under the Workers' Compensation Act.[2] Ms. H. (on L.H.'s behalf) applied for dependent's death benefits on February 24, 2012, exactly six months after she received

---

[2] *See W.VA. CODE* § 23-4-15(a). We discuss this statute in greater detail in Section A of our Analysis.

3

the autopsy report and amended death certificate indicating that Mr. H's cause of death stemmed from a work-related injury.

On March 19, 2012, the employer's claims administrator rejected the application for benefits, finding: (1) it was filed more than six months after Mr. H's death; (2) Ms. H. was not the proper person to file the application on L.H.'s behalf because she was not L.H.'s legal guardian; and (3) there was insufficient evidence to establish that Mr. H's work-related injury in March 2009 was a material contributing factor to his death in December 2010. Ms. H. protested the decision, but the Workers' Compensation Office of Judges affirmed the claims administrator on the ground that the application was filed more than six months after Mr. H's death. The Workers' Compensation Board of Review affirmed the Office of Judges.

By order of this Court, the parties addressed whether Ms. H's application for dependent's death benefits was timely and whether Ms. H. was a proper party to bring a claim for dependent's death benefits on L.H.'s behalf. This Court appointed a guardian ad litem to represent L.H.'s interests.

## II.
## STANDARD OF REVIEW

When considering a question of law, we have held: "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Furthermore, we review *de novo* legal

4

conclusions of the Workers' Compensation Board of Review. *Johnson v. W.Va. Office of Ins. Comm'r.*, 226 W.Va. 650, 654, 704 S.E.2d 650, 654 (2010).

**III.**
**ANALYSIS**

Dependents of a deceased employee have six months from the date of a work-related death to apply for death benefits under the Workers' Compensation Act. The parties dispute two issues: (1) whether the time limitation for applying for death benefits may be tolled until a claimant could have reasonably learned that the death was work-related; and (2) whether Ms. H. (L.H.'s grandmother) is a proper party to apply for dependent's death benefits on L.H.'s behalf. We examine the parties' arguments in turn.

### A. *Statutory Deadline to Apply for Dependent's Benefits*

In 1986, the Legislature adopted a six-month period in which claims may be filed for workers' compensation dependent's death benefits. The pertinent statute provides:

> To entitle any employee or dependent of a deceased employee to compensation under this chapter, other than for occupational pneumoconiosis or other occupational disease, the application for compensation shall be . . . [filed] *within six months from and after the injury or death*, as the case may be, and unless filed within the six months period, the right to compensation under this chapter is forever barred, *such time limitation being hereby declared to be a condition of the right and hence jurisdictional*[.]"

*W.VA. CODE* § 23-4-15(a) [2010] (emphasis added).

Ms. H. argues that, despite the time limitation in West Virginia Code § 23-4-15(a) being jurisdictional, there was no way of knowing that Mr. H's death was work-

5

related until the autopsy report was completed and made available. She argues this is a narrow circumstance in which the time limitation for filing a claim may be tolled. The insurance commissioner responds that West Virginia Code § 23-4-15(a) does not specify an exception to its time limitation, and therefore, it may not be tolled under any circumstances, even when there was no indication that the decedent's death was work-related until eight months after the death had passed.

We have held that, "[t]he primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W.Va. 660, 76 S.E.2d 885 (1953). "If the literal meaning of a statute is inconsistent with the meaning or intent of the legislature, or would lead to perverse results, the words of the statute must be interpreted to reflect the intention of the legislature." *Pryor v. Gainer*, 177 W.Va. 218, 222, 351 S.E.2d 404, 408 (1986). *See also Mitchell v. Broadnax*, 208 W.Va. 36, 46, 537 S.E.2d 882, 892 (2000) ("Although a provision's language may be plain, there nevertheless may arise circumstances in which the plain language does not speak completely on the subject to which it is addressed."). In the same vein, we have said:

> It is the *duty* of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. *It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.*

Syl. Pt. 2, *Click v. Click*, 98 W.Va. 419, 127 S.E.194 (1925) (emphasis added). Likewise, "[w]here a particular construction of a statute would result in an absurdity, some other

6

reasonable construction, which will not produce such absurdity will be made." Syl. Pt. 2, *Newhart v. Pennybacker*, 120 W.Va. 774, 200 S.E. 350 (1938).

Therefore, our inquiry does not end just because West Virginia Code § 23-4-15(a) does not specify any exceptions to its time limitation that is "a condition precedent and hence jurisdictional."[3]  Rather, we read the statute so as to effectuate the Legislature's intent.  In ascertaining the Legislature's intent behind the time limitation in West Virginia Code 23-4-15(a), we are guided by the spirit, purposes, and objects of the general Workers' Compensation Act.  As we have often said: "[a] statute should be so read and applied as to make it accord with the spirit, purposes, and objects of the general system of law of which it is intended to form a part[.]" Syl. Pt. 5, in part, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

The legislative intent behind setting time limitations for claims under the Workers' Compensation Act is two-fold.  On the one hand, it protects employers from frivolous or outdated claims, while on the other hand, it is intended to afford claimants sufficient opportunity to investigate a claim before it is filed.

As to the Legislature's goal of protecting employers from frivolous or outdated claims, we have stated, "[i]t is generally accepted that the purpose of time

---

[3] Similarly, in *Miller v. Romero*, 186 W.Va. 523, 413 S.E.2d 178  (1991) (*overruled on other grounds by Bradshaw v. Soulsby*, 210 W.Va. 682, 558 S.E.2d 681 (2001)), we tolled a time limitation that was a "an integral part of the statute itself and creates a condition precedent to . . . the bringing of an action" on grounds of defendant's fraudulent concealment of facts.  Although *Miller* dealt with the Wrongful Death Act, the fact that the time limitation was a "condition precedent" to the cause of action in that case makes it analogous to this case.

7

limitations in filing workers' compensation claims is to provide notice and to enable the employer to *protect himself by prompt investigation and treatment of the injury*." *Holdren v. Workers' Comp. Comm'r.*, 181 W.Va. 337, 339, 382 S.E.2d 51, 533 (1989) (emphasis added). Pursuant to this goal, the Legislature amended the Workers' Compensation Act in 1986 to provide that the time limitations are "jurisdictional." These 1986 amendments were in response to a prior decision by this Court in *Bailey v. SWCC*, 170 W.Va. 771, 296 S.E.2d 901 (1982), which held that the time limitations for workers' compensation claims were procedural, not jurisdictional. Syl Pt. 1, *Id.*, 170 W.Va. 771, 296 S.E.2d 901. Under *Bailey*, even when the claimant missed the deadline by years, the delay in filing would be excused for a wide array of reasons, such as "innocent mistake, excusable neglect, unavoidable cause, fraud, misrepresentation, or any other reason justifying relief from the running of the time period." Syl Pt. 2, *Id.*, 170 W.Va. 771, 296 S.E.2d 901. The 1986 amendments to the Workers' Compensation Act effectively overruled *Bailey*. *See* Syl. Pt. 2, *Fucillo v. Workers' Comp. Comm'r.*, 180 W.Va. 595, 378 S.E.2d 637 (1988).

As to the Legislature's goal of affording claimants sufficient time to investigate and file claims, we have stated:

> [A] literal construction of the statute, which . . . would end the jurisdiction of the commissioner . . . eight days after the claimant asked that his case be reopened, would in many cases result in a lack of opportunity to properly investigate the claim. . . . Such a construction cannot reasonably be held to have been within the intent of the Legislature. *Consideration of the merits of every claim, with reasonable time for investigation, must have been what was intended.*

8

*Wilkins v. State Comp. Comm'r*, 120 W.Va. 424, 429, 198 S.E. 869, 871 (1938) (emphasis added).

The position that the time limitation in West Virginia Code § 23-4-15(a) can never, under any circumstances, be tolled is contrary to both of these goals. It would be harmful to employers because it encourages a decedent's family to file a rushed application for death benefits before they have any medical evidence indicating that the death was work-related. Despite the insurance commissioner's suggestion that Ms. H. should have filed her application for death benefits before she received the autopsy report, such a claim would have been purely speculative without it. This finding would necessarily entail that *any* dependent of a person who has died should file for death benefits with the glimmering hope that some evidence might later present itself showing that the death was work-related. Such a result flies in the face of the Legislature's intent of protecting employers from frivolous claims.

A finding in this case that the time limitation in West Virginia Code § 23-4-15(a) can never, under any circumstances, be tolled is also patently unfair to the claimant. Such a finding would saddle the claimant with the impossible task of linking an injury to a death that occurred twenty-one months later. The absurdity of such a result is heightened by the fact that even the decedent's treating physicians and his employer did not recognize the injury as life-threatening, and the autopsy report was not completed and made available to the claimant until eight months after the death. This result directly contradicts the Legislature's intent of affording a claimant reasonable time to investigate his/her claim.

9

Furthermore, the insurance commissioner's argument that West Virginia Code § 23-4-15(a)'s time limitation can never be tolled is inconsistent with other provisions in the Workers' Compensation Act. For example, West Virginia Code § 23-4-16(a)(3) bars awards under the Workers' Compensation Act from being made more than two years after the employee's death, a provision which would be obsolete if the six-month time limitation in West Virginia Code § 23-4-15(a) could not, under any circumstances, be tolled. This position would be inconsistent with our prior holding that "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syl. Pt. 4, *State ex rel. Hardesty v. Aracoma*, 147 W.Va. 645, 129 S.E.2d 921 (1963).

The insurance commissioner's proposed interpretation of the time limitation in West Virginia Code § 23-4-15(a) causes potential harm to employers and claimants alike, and it is inconsistent with other provisions of the Workers' Compensation Act. Therefore, adopting the insurance commissioner's position would bring about an absurd and unjust result that was surely unintended by the Legislature. As we said in Syllabus Point 2 of *Click,* 98 W.Va. 419, 127 S.E. 194, when a construction of a statute (even one that is apparently warranted by the literal sense of the statute's words) would lead to injustice or absurdity, this Court has a *duty* to disregard that construction. Pursuant to this duty, we interpret West Virginia Code § 23-4-15(a) to reflect the Legislature's true intent, uphold the law, and further justice. *Id.* Thus, in drafting West Virginia Code § 23-4-15(a), we find that the Legislature did not intend that a claimant be completely barred from receiving dependent's death benefits where: due to the medical

10

examiner's delay in completing the autopsy, there was no knowledge or understanding that the decedent's death was work-related until eight months after the death, and the claimant promptly filed his/her claim within six months of learning that the death was work-related.

Therefore, we hold that where a claimant to dependent's death benefits under the Workers' Compensation Act delays filing a claim because the claimant was unaware, and could not have learned through reasonable diligence, that the decedent's cause of death was work-related, and the delay was due to the medical examiner completing and making available an autopsy report, the six-month time limitation on filing a claim in West Virginia Code § 23-4-15(a) [2010] is tolled until the claimant, through reasonable diligence, could have learned of the autopsy report finding that that the decedent's cause of death was, in any material degree, contributed to by an injury or disease that arose in the course of and resulting from the decedent's employment. However, we limit our holding to death benefits under the Workers' Compensation Act where the delay was on the part of the medical examiner, not the claimant.[4] This holding does not apply to claimants who delay having an autopsy performed.

---

[4] We recognize that the language of the Workers' Compensation Act evidences an intent to limit a claimant's ability to file for benefits, protest, object, or appeal, subject to strict time limitations. Such language is necessary to bar frivolous or outdated claims. Therefore, we tread lightly in our holding to render a narrow ruling that does not have the same unintended, expansive consequences as *Bailey*, 170 W.Va. 771, 296 S.E.2d 901. It is for this reason that we limit our holding to death benefits.

11

However, we caution that the six-month time limitation in West Virginia Code § 23-4-15(a) is jurisdictional and a condition of the right to compensation under the Workers' Compensation Act. Therefore, the claimant's failure to timely file a claim within six months of when he/she could have learned that the employee's death arose in the course of and resulting from employment will not be excused.

There was no medical evidence at the time Mr. H. died linking the death to his employment. The autopsy was the first known medical evidence indicating that his cause of death was work-related, but it was not completed and made available to the family until August 24, 2011 (eight months after the death). Therefore, the time limitation in West Virginia Code § 23-4-15(a) did not begin to run until August 24, 2011, if Ms. H. could not have reasonably learned that Mr. H's cause of death was work-related before that time. However, the Board of Review failed to determine whether Ms. H. could have reasonably learned that Mr. H's death was work-related before then. Therefore, Board of Review erred in finding that Ms. H's application was time-barred, as a matter of law, because she did not file her application within six months of Mr. H's death.

### B. *Proper Party to File for Dependent's Death Benefits on Minor's Behalf*

The claims administrator also rejected the application for dependent's death benefits on the ground that Ms. H., L.H.'s grandmother, was not a proper party to file an application on L.H's behalf. West Virginia Code § 23-4-15(a) provides that when an employee or dependent of an employee "is mentally or physically incapable of filing the application, it may be filed by his or her attorney *or by a member of his or her family*."

12

(Emphasis added). *See also W.Va. Code* § 2-2-10(m) [1998] (persons under the age of eighteen years are "under disability"). By law, L.H., a six-year-old child, is both mentally and physically incompetent to file an application for dependent's death benefits. Because Ms. H. is L.H's grandmother, she is a member of L.H.'s "family," and she is a proper party to file an application on L.H's behalf. Accordingly, we find it was error to have rejected Ms. H's filed application on the ground that she was not L.H.'s legal guardian.[5]

### IV.
### CONCLUSION

For the reasons set forth herein, the Board of Review erred in finding that, as a matter of law, Ms. H. was untimely in applying for dependent's death benefits on L.H.'s behalf. Furthermore, Ms. H. was a proper party to file for dependent's death benefits on L.H.'s behalf. Accordingly, we reverse and remand the Board of Review's order.[6]

Reversed and Remanded.

---

[5] While Ms. H is a proper party to file the death benefits claim, ultimate payment and/or settlement of such claim might rest with the child's guardian.

[6] This appeal does not encompass whether there is sufficient, credible evidence linking Mr. H's death to the work-related injury or whether Mr. H's family should have reasonably known at the time of his death that the cause of death was work-related. On remand, the parties will have the opportunity to develop these issues.

13